May it please the court. I represent Deangelo McLaurin in this joint appeal. I'd like to address the instruction issue that is common to both defendants as well as the joinder and sentencing issues that are specific to Mr. McLaurin. On the instruction issue, the district court erred by requiring the jury to find government overreach as a precondition to finding entrapment. The government has not identified a single case in this circuit or in any other that approves the use of an overreach instruction. And the 11th Circuit's entrapment instructions expressly prohibit the jury from making the same inquiry that this instruction requires. The problem with the instruction is that the jury's role is to find the facts in any given case. And the question of whether the government has overreached as that term is commonly used and understood is not a question of fact at all. It's a question of values or opinions that's going to differ from person to person on a lay jury. By giving this instruction, the district court diverted the jury away from the key factual question in an entrapment case. Was each of these defendants predisposed to commit this particular crime or were they induced to do so only by the government's actions here? Let me ask you this. The language that you're challenging, what does the United States v. Daniel say about that? A Fourth Circuit decision in 1993. Your Honor, United States v. Daniel and United States v. Schuh, which the government also relies on, use the phrase government overreach, but they're different in two important ways. First is that neither of those cases is in the context of a jury instruction, that it proves giving a jury instruction on overreach. The second reason that those cases aren't controlling here is that they each use the phrase government overreach not in its general sense, where it's a very politically charged term, but they use it as a legal term of art. If you look at the Schuh opinion, which again the district court and the government rely on heavily, at page 201 of that opinion, it equates overreaching with something more than solicitation, something more than simply providing the opportunity to commit a crime. It goes on to give us examples, pressure by the government to commit a crime, or the government's taking advantage of an alternative motive, such as by invoking sympathy. If you look at how these terms are defined by other circuit courts, as we point out in footnote six of the opening brief, they give us examples of inducement persuasion or mild coercion. Those things are very different from the charged concept of government overreach, which was put before the jury in this case. Well, the jury asked, said, Judge, tell us what, while they were out deliberating, it's been a no-no, said, Judge, tell us what inducement means, when you use that term. So he goes to a fourth circuit case, and he finds an explanation of inducement, and he reads that to them. So I don't know how you translate that into error, for charging, for defining the term that they asked to be told about. So my question specifically is, what do you think he should have done? Well, I think there are two things he should have done. The first is that he should have just done what he did with the other terms. They also ask more information about what entrapment means and what conspiracy means. On each of those charges, he simply re-read them, the instructions, because those instructions were correct, and they were full. He should have done the same thing with inducement. If you look at the instruction that was given, it already equates inducement with more than just providing the opportunity. And that is all that is required, and all that needs to be given in an instruction. The other thing he could have done, and I don't think it would have been a good idea, but he could have pointed to examples from other cases of what constitutes government overreach, to say things like persuasion or mild coercion can count. Because as it is used commonly, government overreach is a very vague and charged term. I mean, we've had a tremendous debate in this country for the past year about whether the NSA's data collection processes, are they an egregious example of government overreach, or are they a necessary and smart law enforcement tool? We had the same debate for years before about waterboarding and enhanced interrogation techniques and all those things. So when the jury is asked, is there government overreach in this case, it draws back in its mind and says, look, I know they're waterboarding people, I know the NSA is doing all these things. If that's okay, then surely what they did here isn't government overreach. But the question in this kind of case is not whether the conduct of the government is so egregious that it violates due process. There's a whole other strain of case law on that. The question here is whether the government's actions were enough to induce an otherwise not predisposed person to commit these crimes. That is the key. How do you balance that against the fact that these defendants were given at least three opportunities to back out of this supposedly raid on the stash house? And they kept asking, the agents kept asking them, are you sure you want to go through with this? You don't have to go through with this. Well, Judge, those pieces of evidence are exactly why we're not arguing here that this court or that the district court should have directed a verdict of acquittal on entrapment. All we're saying is that the evidence in the record was close enough on that question that it should have gone to the jury under proper instructions. And if you look specific to my client, Mr. McLaurin, I think the key question is whether he was predisposed at the time he was first approached in this thing. If you look to Joint Appendix 342, you get his reaction when he was first approached. When the undercover agent laid out this plan and said, what do you think? My client didn't jump at it. He said, I quote, I don't know. I got to see. It's something real big, dog. I ain't never did nothing like it. That is hesitancy. That is a piece of evidence from which the jury could have found a lack of predisposition with respect to my client. And that was reinforced by the agent's own perception. If you look at Joint Appendix page 351, after this first meeting, he turned to his fellow agent and his confidential informant and said, look, I think he might have had too much pride to tell us that he wasn't up for it. Don't be surprised if he just doesn't call you. Those pieces of evidence were close enough on predisposition. And that's exactly why Judge Conrad gave this instruction in the first place, because he believed, after hearing all of this evidence, including all of these recordings, that the question of entrapment was a close one for the jury. I'll turn to the Joinder issue briefly. The government concedes in its brief that the initial basis of the district court's Joinder opinion was erroneous, as a matter of fact. But it argues that the offenses were nonetheless connected, because these February gun sales led the government to initiate this Stash House thing. That isn't enough under Rule 8, because it requires a connection between the offenses themselves, not merely some overlap in the way that the government investigates them. Here, selling this firearm in February wasn't at all connected to the Stash House thing. My client didn't know anything about the Stash House thing until weeks later. Let me ask you, if I'm correctly understanding the record. Those guns were sold, and then we get this plan concocted. When it's about to be executed, McLaurin had already sold those guns, and he didn't even have a gun in his possession at the time they were ready to go into the Stash House. Is that correct? That's right, Judge Floyd. The way the chronology works is these two gun sales are February 23rd and 25th. At that point, the Stash House thing hasn't started yet. My client doesn't know a thing about it. The first thing that happens on it is March 9th, two weeks later. At that point, he's approached. He gives his hesitant reaction. They eventually talk him into doing it, and it goes forward from there. That's why, as you point out, the fact that he had sold these guns wasn't at all connected to the Stash House thing. It meant that it made it harder for him to do it. He told the agent right off, I just sold my gun, so I would have to go get a new one if I were going to do this. I know you're out of time. When you're coming back on reply, would you take a look at your reply brief, footnote number two? Not right now, just while you're taking a break. Take a look at footnote number two. I need to ask you some questions about that when you come back. Okay. I would like to just flag the sentencing issue so that the government can have a chance to respond to that. Our position, I think, is clear in the briefs that we think this case is on all fours with the Slade decision, and that for that reason, plain error relief is warranted, at least on the resentencing issue, if the court does affirm the conviction. Thank you, Mr. Carpenter. Let's hear from Mr. Hewitt. Thank you, Your Honor. May it please the court, I'm Lawrence Hewitt. I represent Mr. Lowry in this matter. I would like to address the court on the 404B issue as it applies to Mr. Lowry. Initially, Mr. Lowry was charged, as the other defendant, with three counts of a conspiracy for which he was convicted, and it's before this court. In that original indictment, there was a fourth count of possession of firearm by a felon, allegedly happening about eight months prior to anything to do with the conspiracy charges. On my motion, Judge Conrad granted a motion to sever, making specific findings that there was no logical nor temporal relationship between the three conspiracy counts and count four, which is the possession of firearm by a felon. So that count was at that point severed as to sever Now, into the trial, the court then made findings that, as a result of certain questioning by counsel and also some statements made by the defendant, Lowry, during an interview, that the door had been opened and, therefore, this evidence with regard to the possession of the firearm was admissible as 404B. And I would contend, as I have in my brief, that this was error, that, number one, it is not 404B, and, number two, the door was, in fact, not opened. Your Honor, the questions that the judge referred to were questioning by me at the time, if you put them in context, and I think you have to do this, the questions were asked at the time of the third meeting between the defendants and the undercover agents to the effect of, Mr. Lowry didn't have a gun with him at that time, did he? Mr. Lowry didn't have a gun or didn't show you a gun at that time. The answer to that was no, and the reality was that there was never shown a gun or possessed a gun by Mr. Lowry at any time during the life of this conspiracy, either in the restaurants or at any time of the takedowns. You're referring to what the district court determined was opening the door. Yes, sir. And the evidence on cross-examination of the undercover officer Sallow, and in response to something, Mr. Lowry said, quote, I am strapped, end quote. He did make that statement, but my point is that there was no evidence whatsoever of a gun aside from his statement. The gun wasn't shown, but the district court ruled that that allowed them to go into evidence of possession of a firearm prior to that time. Well, that, I think, was the ruling he made, and he made that 404 ruling based on the intent aspect of 404B, finding that it showed intent. But I would contend that, once again, the mere statement by the defendant that he was, quote, strapped, does not then allow the court or allow evidence of an incident four, excuse me, eight months prior with regard to the possession. And, your honors, that was a simple possession. There was no association with a drug transaction or a robbery. It was simply, as the evidence presented itself, Mr. Lowry was stopped and was found in possession of a 9mm firearm. So there was, I would contend, there is no, as the judge found earlier, there is no temporal or logical connection. That still exists. There's still no connection between that eight-month prior incident and the conspiracies here, even though there was one statement made about having, being strapped. So I would contend that that evidence, number one, is inadmissible, and number two, it was prejudicial, and it was more prejudicial than probative, and as a result, I think could have, and we simply don't know, but I would contend that it certainly could have had an effect on the jury's decision in this case, and I think it is a basis for reversal. The other matter I would briefly address is the issue with regard to the charge. I would defer to my co-counsel, who I think has the fact that there was no objection entered as to that charge on behalf of Mr. Lowry, and I would ask the court to review that, not objection, but to review that charge as it applies to Mr. Lowry under the plain error principle. I would contend that of the four prongs of plain error, number one, we would contend it is error, number two, that it's plain error, number three, that it had substantial effect upon the defendant, and more, I think the most important and significant part is number four, fairness to the judicial system and the judicial process, that if a charge is error to one defendant, it is error to both of them. If the charge is an error, it is an error to both defendant and defendant, it is an error to both defendant and defendant. Thank you very much. Thank you, Mr. Hewitt. Mr. Miller? May it please the court, my name is William Miller. I'm here on behalf of the United States. I'd like to begin with the entrapment instruction issue and to clarify the appropriate standard of review. Mr. Hewitt is correct that he didn't object, but there's actually more than that here. Not only did he not object, but below, Defendant Lowry said this is a proper instruction and agreed that the court should give it. And in that situation, there's more than a forfeiture, there's a waiver. You can't, at the district court, agree that instruction should be given and then turn around on appeal and seek to set aside the jury's verdict and obtain a new trial in light of the fact that that very instruction was given. So as to Mr. Lowry, that claim is waived. And whether or not the court looks at this from the perspective of plain error review or from the waiver cases that are cited in the government's brief, the result here is the same. The Lesbier case was cited in the reply brief for the proposition that this review should be for plain error as to the instruction issue for Mr. Lowry. In Lesbier, what the court said was that when you have invited error, there's no impact on substantial rights and it doesn't call into question the integrity of the judicial proceedings. So whether or not you proceed from the position of waiver or from plain error, the result is the same. This issue is not preserved as to Mr. Lowry. As to Mr. McLaurin, there the standard is plain error review. And the reason for that is that below, Mr. McLaurin did register an objection but did not challenge the propriety of the instructions. Not only did he not make this argument about overreach, he didn't make any argument at all as to the correctness of the instruction. And when the district court doesn't have a chance to consider an argument and to correct the alleged error below, this court's review is for plain error only. So that's the standard of review as to each of these defendants with the entrapment instruction. I would also point out, however, that regardless of the standard of review, there was no error in the court's entrapment instructions. The defendants have a hyper focus on one word in the instruction, overreach. What that does is first it distorts the meaning of the clarifying instruction, but moreover, it takes this court's attention away from the key inquiry in cases involving jury instructions. And that is to say, taken as a whole, do these instructions accurately state the controlling law? And so first, starting out with distorting the meaning of the particular instructions, it's important to focus on exactly the words that Judge Conrad used when he gave the clarifying instruction. What he said was inducement requires more than mere solicitation by the government. Inducement is a term of art necessitating government overreach and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party. Considered in that context, overreach means exactly what this court said it meant in Sue, which Mr. Carpenter has already summarized. What overreach means in this context is more than mere solicitation and conduct sufficiently excessive to implant a criminal design in the mind of an otherwise innocent party. It's a far stretch to pull overreach out of that and then contend that there's some kind of value judgment that's coming into play. The words have to be considered as they were used, and here the context shows that overreach means more than mere solicitation. I would also point out that in the Jacobson case, which is the Supreme Court case that the defendant makes the centerpiece of his brief, the Supreme Court used very similar language to this Sue instruction that Judge Conrad gave. Right at the outset, in the summary of his holding, the court concluded that the defendant was entrapped because the government overstepped the line between setting a trap for the unwary innocent and the unwary criminal and failed to establish that petitioner was independently presupposed to commit the crime for which he was arrested. So here, in the Jacobson case, the use of overstep is the same as the use of overreach in our case. It's shorthand for something more than mere solicitation. In addition to distorting the meaning of this particular clarifying instruction, it's also important to look at the context of the instruction. In his reply brief, in their reply brief, the defendants concede that the instructions given prior on entrapment were accurate, and those instructions were re-read in response to the jury's question. They also concede, and this is a quote, that the remainder of the clarifying instruction, quote, focused the jury on the proper inquiry. And so in light of that context, this one word does not change the jury's focus away from the proper inquiry in entrapment cases. And so for those reasons, there's no error in the instruction in this case, plain or otherwise. Moving to some of the evidentiary issues here, a review of this record, and the question with respect to the evidentiary issues is whether or not the district court behaved in an arbitrary or irrational manner, whether or not it acted within its discretion. Here, a review of Judge Conrad's handling of the 404B evidence does not reflect an arbitrary and irrational handling of the 404B evidence. The court carefully considered each piece of the evidence prior to trial, and then listened to the testimony as it developed during trial, and revisited those rulings in light of the defendants opening the door during cross-examination. That's fully within the district court's discretion. What the defendants are arguing on appeal are essentially things that Judge Conrad considered and rejected below. And I'll point out that he didn't do so hastily. After the cross-examination of Agent Stallow, the government raised the fact that both defendants had opened the door to some of the previously excluded 404B evidence. With respect to McLaurin, the judge was considering whether or not questions about whether or not the defendant had engaged in this type of conduct before opened the door to the prior robbery conviction. The court said, based on its hearing of the testimony, that it definitely created that misimpression. But even though that was his view of how the evidence had come out, he still took the matter under advisement and went back and reviewed the transcript before he ultimately ruled. That's hardly an abuse of discretion as to that issue. The judge considered all of the arguments that the defendant's making on appeal, and his judgment is due deference on these type of evidentiary rulings. The same analysis applies as to Lowry, where the questions were not just about whether or not there was evidence that he had a gun other than his own words. The cross-examination on the issue of whether or not he was strapped went beyond that and asked, well that was just talk, that was mere bravado. And so in light of that extension beyond the facts of whether or not he had a gun at the time, the district court reasonably concluded that limited 404B evidence, to show that Lowry could very well have had a gun and had had a gun in the past, was relevant at that point. And in addition to the opening of the door, it's important to note that in this case, entrapment was an issue. And when presented with a valid entrapment offense, it becomes the government's burden to prove predisposition beyond a reasonable doubt. And so that also alters the landscape in light of how the evidence came out at trial. Because the government had to prove a lack of predisposition beyond a reasonable doubt, the evidence of prior bad acts becomes more relevant. And that's a position that nearly every circuit has taken with respect to entrapment offenses. You know, when a defendant utilizes the entrapment offense, where's the limit as to what evidence of other crimes the government can introduce to counteract or rebut the entrapment offense? Surely there is a limit. I would just suggest that in this case, it didn't come anywhere close to that limit. Then how do we know if we don't know where the limit is, whether it's close or not? The limit, as with all evidentiary issues, is whether or not the district court acted outside of its discretion. And so in this case... No, no, no. My question is more specific than that. The defendant's using entrapment as a defense. You've got evidence of prior crimes. Now how do you determine, what is the test for determining whether or not those other crimes, prior crimes, are admissible by the government to rebut the defense of entrapment? The test would be the same in that circumstance as it would with other 404B evidence. The court still needs to consider the queen factors and determine whether or not it's relevant and necessary. When there's an entrapment offense, there's other elements in play that make 404B more relevant. There still has to be a connection between the prior evidence and something that the government has to prove, is my point. And so when you add entrapment in, you've now moved beyond simply the elements of the offense, and you've added additional elements that the government has to prove. And so my response to your question is that the standard is the same. It's just on the issue of relevancy and necessary, there's now something else in play when you have an entrapment instruction or an entrapment defense. Moving to the severance issue briefly, the issue there is whether or not there's a logical relationship between the crimes. But didn't the judge get the reason wrong, the reason he gave in ruling on severance? Didn't he get that wrong? He had the facts wrong? He definitely… He had a misconception, wrong impression of what the facts were? Yes, Judge Traxler. What do we do now that he's ruled and we know the reason he gave was wrong? One of the reasons he gave was wrong. That's the part where we have a dispute. And I would also point out that even if he was wrong, by the time he heard all the evidence, he still renewed his prior ruling. And so even with that… No, but that means that after he had heard he was wrong, he still ruled the same way. Correct, which from the government's perspective… That doesn't give me much confidence. Right. From the government's perspective, that just simply illustrates that there was still a logical relationship, even given the mistake on that fact. It was also important to the district court that the confidential informant was the same between all the meetings, or at least the initial meetings, as to the home invasion and as to the firearm sales. And so that's a logical relationship. It's also the firearm sales, those were one of the reasons why Mr. McLaurin was targeted in this case. His ability to procure firearms in a matter of days prior to the robbery. It was procuring the firearm? Mr. McLaurin's ability to… I thought he was selling. Sell firearms. Excuse me, I'm sorry if I… So he's divesting himself of firearms. Correct. And that shows his propensity to commit a later crime? It shows that he has access to the tools of the trade. And that was another important part of the district court's ruling in this case, is that those prior firearm sales would have been admissible in a trial on the home invasion robbery. Even though he's not the one buying the gun, he's the one selling the gun. Your position, they're interchangeable as far as 404B evidence is concerned? The government's position is that shows that he has ready access to firearms. I mean, the fact that on one day he comes with a .38 special, and then a matter of days later he's got a sawed-off shotgun for sale. And I'll also point out that the testimony and evidence shows he was offering to sell additional guns even after the first two sales. And so… Isn't that just a temporal connection? There is also the temporal connection in this case. Would that be enough? This court's prior precedent would establish that temporal in and of itself is likely not enough in isolation. There still needs to be a logical relationship, which in this case we do have based on the presence of the confidential informant at both cases and the admissibility of the sales in the subsequent trial on home invasion. But what did he do other than sell those guns that was in furtherance of this conspiracy? First of all, would you agree that the act that was done had to be in furtherance of the conspiracy? Not necessarily, just to establish a logical relationship. It doesn't have to be an overlap in elements in order for the crimes to be joined. All that's required under this court's precedent is a logical relationship between the crimes. And in that scenario, the default is joined. And so in this case, the prior firearm sales and the presence of the same or similar parties in the initial meetings provides that logical relationship. And so, no question, Judge Conrad was mistaken on the presence of the confidential informant in the second firearm transaction. But his ruling on the motion to sever, that was not the sole basis for his ruling. He also went on to conclude that the evidence of those firearm transactions would have been admissible in the prior home invasion. And the presence of the confidential informant does show that that's where the story starts for purposes of the home invasion. So it's also inextricably intertwined in that sense. Moving to the sentencing issue finally, the government agrees that there was a plain error in Mr. McLaurin's calculation of his criminal history. The dispute in this case is whether or not that plain error implicated the defendant's substantial rights and calls into question the fairness and integrity of the judicial proceedings where the sentence that he received was within both the originally calculated range and the correctly calculated range. And that's a question that this court has yet to consider. The defendant cites the Slade case, but in the Slade case, the corrected range was substantially lower than the sentence that the defendant received. In his reply brief, the defendant cites three cases from different circuits addressing a situation like this one where the sentence was within both the initially calculated range and the corrected range. On close review, only one of those cases actually helps the defendant. There's two Fifth Circuit cases and one Ninth Circuit case. And the first Fifth Circuit case, the more recent one, that's the Pratt case, the court held that when the sentence is within the corrected range, we do not assume in the absence of additional evidence that substantial rights were impacted. But in this case, instead of being on the high end, he's on the low end. So isn't that a non-speculative basis that if they had correctly calculated the guideline, the judge would have likely sentenced him on the low end of the property guideline? The government's position is that still calls for speculation. And even if the defendant gets over the substantial rights issue, there's still the fourth prong under Alano, which is whether or not it calls into question the fairness and integrity of the judicial proceedings. And so the government would fully admit that this... Aren't these decisions that shouldn't be made by the district court on remand? To remand any time there's a plain error in sentencing would eviscerate Alano. The government fully admits that this issue... There is a non-speculative basis for concluding that McLaurin would get a lesser sentence. And I would concede that this sentencing issue is by far the closest issue in this case. But nevertheless, there's no case in this court that's yet addressed this situation where you have the sentence, or there hasn't one been cited, where you have a sentence that's within the corrected range. And so the question is, in those circumstances, whether or not that impacts the fairness and integrity of judicial proceedings. That's the question for the court. If there's no further questions, Your Honor, I'll yield the balance of my time. Okay. Thank you, Mr. Miller. Thank you. Mr. Carpenter. No, excuse me. Mr. Hewitt is first, I believe. Okay. Mr. Carpenter. Mr. Carpenter, do you want me to tell you why I wanted you to look at the footnote? Sir? I said I'm ready to know. As I understood your argument, it was that the judge has given the supplemental charge defining inducement and defining it in terms of government overreaching unnecessarily and improperly focused the jury's attention on that element as opposed to the issue they were charged to determine, which is whether or not there was predisposition. But when I read the footnote, it seemed to indicate you agreed both of them ought to be charged. So if that was true, I don't see where the harm is if you agree both of them. Well, I agree both of them need to be charged, and I do agree that the initial instruction that was given is full, complete, accurate, consistent with Jacobson and with the pattern instructions in every circuit. The problem with the supplemental is that it added something new, a new element not accounted for in the initial instructions. It added this overreach factor. Okay. I understand. So with that, I would turn to the Joinder issue, which was discussed quite a bit. I think the crucial point on Joinder is that this court's decision in Hawkins is really, really on point. It says both that the temporal connection, as Judge Floyd pointed out, isn't going to be enough. It also says, you know, the government says, well, this evidence would have come in anyway under Rule 404B, but that's just not right. That's just not consistent with Hawkins. I mean, Judge Conrad, in this very case, applied Hawkins and says, as a general matter, under Rule 404B, evidence of prior possession shouldn't come in. He only allowed it in with respect to Mr. Lowery based on his conclusion that the door had been opened, based on cross-examination questioning. He was right to apply the initial principle. Evidence of prior possession, as in Hawkins, isn't, in one occasion, isn't admissible to prove a predisposition or an intent to use a weapon in a violent felony on another. In Hawkins, it was a carjacking. And the court said that even though he possessed a gun, you know, a couple of weeks before this carjacking, and even though he allegedly used the gun at the carjacking, it wasn't enough that there was, you know, the use of a gun in both circumstances. It wasn't enough. And I think it's important to point out just how prejudicial this evidence was in this case. If you look at the closing arguments, both defense counsels focused their arguments on entrapment. And what does the government do when it gets up in response? It says, you know, it says the defense counsel is telling you to be concerned about the police actions in this case. Quote, what should be concerning to you is that members of the general public are walking around with sawed-off shotguns, shoved down their pants legs, selling them to undercover police officers. In other words, the government couldn't say, look, these people on entrapment were predisposed to commit this type of offense. They'd done it in the past. They haven't. They've never done something like this. Instead, the government had to point to these prejudicial facts that my client, Mr. McLaurin, sold a shotgun a few weeks beforehand. If not for the misjoinder, that evidence wouldn't have come in, and that's why a retrial in those counts is warranted. I may be wrong, but didn't either Mr. McLaurin or Mr. Lowry at some point say that they had raided a stash house before? Your Honor, that's a great question, actually. I would direct the court to Joint Appendix page 349. The government relies on this notion that Mr. McLaurin had talked about his prior involvement in one of these. But to be clear, he's not suggesting that he was the leader of some elaborate scheme before. What he says is at Joint Appendix 349, yeah, I got a last-minute call, but I didn't know what was going on. I went with my friend, and he gave me 10 grams. His friend got $70,000 worth of cocaine. He was given 10 grams, which has a street value of about $300. He didn't necessarily have to be the leader if he had participated in the raid of a stash house before. Again, Your Honor, that goes back to the question of whether there is a lack of predisposition. We grant that there is evidence on that question going both ways. That's why we're not asking the court to direct a verdict on the entrapment defense. We're suggesting that it should be decided by the jury based on proper instructions first. And second, in the absence of this misjoined count, which brought in prejudicial evidence that should not have been there. Thank you, Your Honor. Mr. Hewitt, I note you're court-appointed.
judges: William B. Traxler, Jr., Henry F. Floyd, Clyde H. Hamilton